Zimmerman, J.
 

 Section 8623-72, General Code, is controlling in this case. It was passed in the interests of minority and dissenting stockholders upon the happening of certain contingencies. The terms of this section, materially affecting the pending case, are that when a majority of stockholders vote to sell the corporate property and assets, the stockholders not voting therefor shall be paid the fair cash value of their shares as of the day before the vote was taken, provided that within twenty days after the vote they object in writing to such sale and make written demand for the payment of the fair cash value of their shares, stating the, number and kind of .shares held and the amount claimed as the fair cash value thereof.
 

 Within ten days after receiving the demand the
 
 corporation
 
 shall advise the demanding stockholders
 
 *431
 
 in writing whether it will pay the amount asked. • Upon refusal, it shall make a written counter proposal.
 

 When the
 
 corporation
 
 and such dissenting stockholders cannot agree upon a price, either may, within six months after the day the vote was taken, petition the Court of Common Pleas of the county in which the corporation has its principal office to determine the fair cash value of such shares.
 

 If no petition is filed by the
 
 corporation
 
 or the dissenting stockholders within the six-month period, “the fair cash value of the shares
 
 shall conclusively be deemed to be equal
 
 to the amount offered to the dissenting shareholder by the
 
 corporation
 
 if any such offer shall have been made by it as above provided, or in the absence thereof, then
 
 an amount equal to that demanded by the dissenting shareholder as above provided.”
 
 (Italics ours.)
 

 It might be well to observe here that the per share amount demanded by the dissenting stockholders as the fair cash value of their stock is appreciably greater than the per share amount which will be received by other stockholders upon distribution of the amount derived from the disposal of the corporate assets.
 

 The paramount and precise question for decision is whether in the existing circumstances the part of Section 8623-72, General Code, stipulating that the fair cash value of the shares of dissenting stockholders “shall conclusively be deemed to be equal” to the amount demanded by them, has an unconstitutional operation against the majority stockholders, as being violative of the due process section of the 14th Amendment to the federal Constitution.
 

 It is the contention of the defendants that since the statute makes no provision for notice of any kind to the majority stockholders of the demands of the minority and gives them no opportunity to be heard before a competent tribunal in a matter touching their
 
 *432
 
 personal interests, the conclusive presumption contained therein as to the value of the shares of the dissenting stockholders, of which the plaintiffs are attempting to take advantage, deprives the majority of their property without due process of law and is therefore unconstitutional in its effect.
 

 Conversely, the plaintiffs and two members of the Court of Appeals take the position that the majority stockholders, having voted to sell the corporate property, thus starting the machinery in motion, should thereafter have kept themselves advised of the steps taken by the minority, and could have “intervened” to protect their interests. Having failed to do so, they have no just cause for complaint as to the “conclusive presumption” of the statute.
 

 The pecuniary and personal interests of two opposing groups of stockholders are primarily involved in a situation like the present one — the majority who voted for the sale of the corporate property, and the minority who did not so vote. After the vote is taken, Section 8623-72, General Code, confines dealings and court proceedings to the
 
 corporation
 
 on the one hand and dissenting stockholders on the other. Majority stockholders are left entirely out of the equation.
 

 It is well settled that the directors act as the corporation (10 Ohio Jurisprudence, 676, Section .501); and that they are in no sense personal representatives of the stockholders by whose sufferance they hold office. 10 Ohio Jurisprudence, 671, Section 498.
 

 Putting it a little differently, “a stockholder and the corporation of which he is a member, are separate and distinct persons in law, and their interests are always distinct and sometimes adverse.”
 
 Lawson & Covode
 
 v.
 
 Farmer’s Bank of Salem,
 
 1 Ohio St., 206, 211.
 

 Hence, a stockholder of a corporation is not chargeable with actual knowledge of its business affairs or of notices imparted to it, as is a director. 13 American
 
 *433
 
 Jurisprudence, 471, Section 419; 10 Ohio Jurisprudence, 343, Section 237.
 

 By voting for the sale of the corporate property, the majority stockholders were not thereby chargeable with notice of the demands of the minority, affecting the individual interests of the former in the distribution of funds, which demands were subsequently transmitted to the. corporation. The voting and the later conduct of the minority were separate and distinct matters.
 
 Geiger
 
 v.
 
 American Seeding Machine Co.,
 
 124 Ohio St., 222, 177 N. E., 594, 79 A. L. R., 614.
 

 Prom the record in the instant case it does not appear that any of the majority stockholders, outside of the directors, had knowledge of the demands made on the corporation by the minority, or had knowledge that the president of the corporation on his own initiative had written the letters of June 26, 1936, unqualifiedly refusing such demands and making no counter offer.
 

 But assuming, for the purposes of this discussion, that the majority stockholders did have notice or were chargeable with notice of the minority demands, could they have acted in the assertion of their individual rights and, if so, were they obliged to act? It seems to us the question requires a negative answer. In the first place, the controlling statute does not provide for action on the part of the majority; negotiations and resort to judicial proceedings are limited to the corporation and the minority stockholders who have asserted themselves. In the second place, knowledge cannot be imputed to the majority of the arbitrary stand of the company president, or that no court proceedings were intended to be instituted by the corporation or the minority within six months to establish the fair cash value of the shares, as authorized by the statute. And in the third place, no real detriment occurred to the majority until the expiration of the six-month period, when the conclusive presumption be
 
 *434
 
 came absolute, through the failure of the corporation or the demanding minority to move.
 

 Essential elements of due process of law are (1) notice, and (2) an opportunity to be heard. 8 Ohio Jurisprudence, 707, Section 591. Therefore, a statute containing a conclusive presumption, or a presumption which operates to deny a vitally affected person fair opportunity to repel it, violates the due process clause of the Constitution. 12 American Jurisprudence, 317, Section 625.
 

 Such is the effect of the pertinent part of Section 8623-72, General Code, in the present case as to the majority stockholders, and it is therefore unconstitutional in its operation. Of course, “the constitutionality of a law may be determined by its operative effect.” Cas
 
 tle
 
 v.
 
 Mason,
 
 91 Ohio St., 296, 110 N. E., 463, Ann. Cas. 1917A, 164.
 

 We do not consider the present holding in conflict with the case of
 
 Geiger
 
 v.
 
 American Seeding Machine Co., supra
 
 (124 Ohio St., 222, 177 N. E., 594, 79 A. L. R., 614). Section 8623-72, General Code (112 Ohio Laws, 37), as it applied to such case, provided that a minority shareholder voting against the sale of the corporate assets might object in writing, within twenty days of the vote authorizing the sale, and demand the payment of the fair cash value of his shares.
 

 “In case of disagreement * * * the dissatisfied . shareholder may, within six months after such demand is nmde, but not thereafter, petition the Court of Common Pleas * * * to appoint *
 
 * *
 
 three appraisers to determine the fair cash value of the shares * # # J)
 

 It is to be noted that the section as it then read contained no provision as to the corporation fixing and offering a fair cash value, no “conclusive presumption” upon failure to act, and was quite different from its existing form.
 

 
 *435
 
 In the phase of the
 
 Geiger case
 
 involving Section 8623-72, General Code (112 Ohio Laws, 37), no constitutional questidn seems to have been raised, and it Was held that the single minority stockholder who followed the procedure outlined by such section was entitled to receive the fair cash value of his stock.
 

 The
 
 Geiger case
 
 is also distinguishable on its facts. There, in the absence of any controlling statute, a preferred stockholder brought a chancery action to enjoin the corporation from distributing the proceeds derived from the sale of the corporate assets unless and until the preferred stockholders received the par value of their stock plus dividends. Taking the view that the controversy was in fact between the preferred and common stockholders as the real parties in interest, and that the. corporation was nothing more than a “stakeholder,” the court held that under the circumstances it was
 
 not error to permit
 
 the individual stockholders to become parties, plead their claims, and prosecute error, especially when the corporation had announced its intention to abide by a lower court decree, which proved satisfactory to neither the preferred nor common stockholders.
 

 In giving the preferred stockholders a partial advantage, the court rested its decision on the contractual significance to be attached to the stock certificates and the articles of incorporation.
 

 Six members of this court are of the opinion that the part of Section 8623-72, General Code, under discussion, has an unconstitutional operation in this case, for the reasons hereinbefore expressed.
 

 Notwithstanding the adverse decision on the constitutional question, plaintiffs contend they are entitled to prevail on two other grounds, -viz., estoppel and
 
 res judicata.
 

 As to estoppel, the argument is that the corporation and the majority stockholders, having invoked
 
 *436
 
 Section 8623-65, General Code, to sell the property, which section refers to and makes Section 8623-72, General Code, a part thereof, will not be permitted to claim the unconstitutionally of any portion of the latter section.
 

 The answer to this is that Section 8623-72 is not made a part of Section 8623-65. In fact, they are separate and distinct and cover different subjects. Section 8623-65 authorizes a corporation to sell its entire assets upon notice to all stockholders and upon a favorable vote at a called meeting, while Section 8623-72 deals entirely with the rights of the dissenting stockholders
 
 after
 
 the vote, making no provision for the participation by the majority in affairs directly affecting their pecuniary interests.
 

 As to
 
 res judicata,
 
 it appears that some three months after the petition was filed in the pending action and subsequent to the filing of an answer and a number of motions, one of the majority stockholders on her own behalf and on behalf of all other stockholders similarly situated, filed an intervening petition in the cause. Upon motion, the petition was stricken from the files by the trial court and the case proceeded with the original parties. The order entered on the motion pertained to a
 
 procedural
 
 matter involving only proper parties to the action and cannot be construed as a determination on the merits. And of course the rule is that an order or judgment to operate as
 
 res judicata
 
 must have been rendered on the merits of.the case. 15 Ruling Case Law, 955,. Section 431; 34 Corpus Juris, 774, Section 1193; 2 Black on Judgments (2 Ed.), 1043, Section 693; 2 Freeman on Judgments (5 Ed.), 1557, Section 738.
 

 The members of this court concurring in the judgment are of the opinion that neither the doctrine of estoppel nor
 
 res judicata
 
 has application here.
 

 
 *437
 
 The judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Williams and Matthias, JJ., concur.