Submitted on record and brief October 28, 1998, reversed and remanded for further proceedings February 3, 1999

Brian John MILLER,
*Respondent,*

*v.*

Howard David LEIGHTY,
*Appellant.*

(9711-09352; CA A101103)

973 P2d 920

Howard David Leighty filed the brief *pro se* for appellant.

No appearance for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

**HASELTON, J.**

Respondent in a stalking protective order (SPO) proceeding appeals, challenging the issuance of a permanent SPO. ORS 163.738(2)(a)(B). He argues, *inter alia*, that the trial court impermissibly precluded him from presenting evidence in opposition to the issuance of the permanent SPO. We agree and, consequently, reverse and remand for further proceedings.

In November 1997, petitioner applied for and obtained a temporary SPO against respondent.[1] Following a hearing on December 19, 1997, that temporary order was renewed and extended to January 16, 1998. The court subsequently extended the temporary order to January 30, 1998, the date of the hearing on the issuance of a permanent SPO.

At the January 30, 1998, hearing, petitioner was the first witness, and he testified at the outset that, immediately before the hearing, respondent had spoken with him in the hallway outside the courtroom. The court deemed that contact to violate the existing temporary order,[2] interrupted petitioner's testimony, and then engaged in the following colloquy with respondent:

"THE COURT:   Well, let me deal with that right now.

"* * * * *

"THE COURT:   Well, Dr. Leighty, I guess I need to address you directly.

"[RESPONDENT]:   I'd prefer to be sworn first, sir, if you don't mind.

"THE COURT:   Dr. Leighty, don't you dare —

"[RESPONDENT]:   I'm sorry, Your Honor. I don't —

"THE COURT:   Don't you dare —

"[RESPONDENT]:   I don't mean to be impertinent, Your Honor, but I want to tell you that I will tell you the truth, every matter that comes before this Court, and I

---

[1] The particulars of the parties' relationship and dispute are immaterial to our discussion.

[2] We express no view on that matter.

want to emphasize my intention to be truthful at every moment.

"THE COURT: Wait. Wait. Wait. I'm asking you to give me an unsworn statement.

"[RESPONDENT]: Very well, sir.

"THE COURT: * * * Was there some contact out in the hall?

"[RESPONDENT]: There was a brief moment of contact, Your Honor.

"THE COURT: You said something to him?

"[RESPONDENT]: I did say a word to him. Yes, Your Honor.

"THE COURT: I told you not to.

"[RESPONDENT]: Your Honor, it was my understanding, I was advised by my attorney, that the restraining order had expired on the 16th. * * *.

"THE COURT: Lord have mercy. I told you, my order is different from this restraining order.

"[RESPONDENT]: I didn't understand that, Your Honor.

"THE COURT: This stalking protective order is of unlimited duration.

"[RESPONDENT]: Your Honor, may I have —

"THE COURT: No.

"[RESPONDENT]: May I be heard?

"THE COURT: No. You may not. You are in contempt of Court, sir, and I am not going to proceed with this matter. I am going to impose the stalking order, and that's all.

"* * * * *

"It is a shame [comment directed to respondent's counsel] that your client is unable to follow what I'm sure are your—don't talk to me. Don't talk to me—what are your instructions. He is clearly in contempt of Court, he has clearly—he has clearly failed to abide by my order. I'm not going to proceed with this. I'm going to impose the stalking

> protective order, and I'm sure, [respondent's counsel], that you will take it to the Court of Appeals. Please do so, sir."

Thus, as an apparent sanction for the alleged violation of the temporary SPO, the court precluded respondent from cross-examining petitioner or from presenting any evidence in opposition to the SPO.[3]

Whatever the merits of the trial court's view that respondent had violated the temporary SPO, we know of no authority that allows a court to preempt the presentation of evidence in opposition to a *permanent* SPO as a sanction for the violation of a *temporary* SPO. Indeed, the statutes governing the issuance of SPOs expressly contemplate the presentation of evidence. *See, e.g.*, ORS 163.738(2)(a) ("The respondent shall be given the opportunity to show cause why a court's stalking protective order should not be entered."); ORS 163.738(2)(a)(B) (providing for the issuance of a court's stalking protective order if the court finds the required elements "by a preponderance of the evidence"). Moreover, the statutes pertaining to violations of SPOs refer solely to recovery of compensatory and punitive damages and attorney fees, *see* ORS 30.866(4), and the imposition of criminal sanctions. *See, e.g.*, ORS 163.750 (defining crime of violating court's stalking protective order).

The court erred in entering the permanent SPO without affording respondent an opportunity to cross-examine adverse witnesses, including petitioner, and to present his own evidence. *See generally State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990) ("The essence of fundamental fairness is the opportunity to be heard at a meaningful time and in a meaningful manner.").[4]

Reversed and remanded for further proceedings.

---

[3] Although the court referred to respondent being "in contempt," the record includes no judgment of contempt. ORS 33.015. We note, moreover, that the alleged violation, which antedated the hearing, was outside the court's presence. *See* ORS 33.096 ("A court may summarily impose a sanction upon a person who commits a contempt of court in the immediate view and presence of the court. The sanction may be imposed for the purpose of preserving order in the court or protecting the authority and dignity of the court."). *See also* ORS 33.105(3) (describing sanctions court may impose in a summary contempt proceeding: a punitive fine of not more than $500, confinement for not more than 30 days, or probation or community service).

[4] Given our disposition, we do not address appellant's remaining contentions.